IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jeffrey L. ELVERMAN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

Jeffrey L. ELVERMAN, Respondent-Respondent.

Supreme Court

*No. 2006AP1062–D. Oral argument February 20, 2008.
—Decided April 8, 2008.*

2008 WI 28

(Also reported in 746 N.W.2d 793.)

For the complainant-appellant there were briefs by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

For the respondent-respondent there was a brief by *Daniel W. Hildebrand, Dawn E. Hildebrand, Joseph A. Ranney III,* and *DeWitt Ross & Stevens, S.C.,* Madison, and oral argument by *Joseph A. Ranney III.*

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) has appealed a referee's report finding Attorney Jeffrey L. Elverman violated former SCR 20:8.4(f)[1] by failing to report co-trustee fees he received as income on his state and federal tax returns for the years 1999 to 2003, thereby violating a supreme court decision regulating the conduct of lawyers, *In re Disci-*

[1] Effective July 1, 2007, substantial changes were made to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys, SCR Chapter 20. *See* S. Ct. Order 04–07, 2007 WI 4, 293 Wis. 2d xv, 726 N.W.2d Ct.R-45 (eff. July 1, 2007); and S. Ct. Order 06–04, 2007 WI 48, 297 Wis. 2d xv, 730 N.W.2d Ct.R.-29 (eff. July 1, 2007). Because the conduct underlying this case arose prior to July 1, 2007, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2007.

*plinary Proceedings Against Owens,* 172 Wis. 2d 54, 56–57, 492 N.W.2d 157 (1992), and recommending a public reprimand for that misconduct.

¶ 2. The OLR's complaint had also alleged that by receiving $230,000 in co-trustee fees for work performed on trusts and failing to turn those fees over to the law firm in which he was a partner, as required by the firm's partnership agreement, Attorney Elverman violated SCR 20:8.4(c).[2] The referee found that the OLR failed to present clear, satisfactory and convincing evidence to support a conclusion that Attorney Elverman violated SCR 20:8.4(c).

¶ 3. The OLR argues that the referee's finding that Attorney Elverman did not know he was not entitled to retain trustee fees is clearly erroneous. The OLR also appeals the sanction recommended by the referee.

¶ 4. We conclude that all of the referee's findings of fact, including those challenged by the OLR, are supported by satisfactory and convincing evidence. Thus, we will not disturb the referee's conclusion that the OLR failed to prove that Attorney Elverman violated SCR 20:8.4(c). We conclude, however, that the appropriate discipline for Attorney Elverman's violation of SCR 20:8.4(f) is a nine-month suspension of his license to practice law rather than the public reprimand recommended by the referee. We further agree with the referee that the costs of the proceeding, which total

Former SCR 20:8.4(f) states that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[2] Former SCR 20:8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

$24,222.99 as of March 3, 2008, should be assessed against Attorney Elverman.

¶ 5. Attorney Elverman was admitted to practice law in Wisconsin in 1986. He is currently a partner with Michael Best & Friedrich, LLP, in Waukesha County. From 1986 to 1991 Attorney Elverman was an associate at Foley & Lardner. In 1991 and 1992 he was associated with a Florida law firm. Attorney Elverman is also a registered, but unlicensed CPA. He has no prior disciplinary history.

¶ 6. In October 1992 Attorney Elverman started as an associate at Quarles & Brady. He was a member of the firm's trusts and estates group. He became a partner at Quarles & Brady effective October 1, 1995. He resigned from Quarles & Brady in 2004 for reasons unrelated to the acts which are the subject of this proceeding.

¶ 7. When he was offered a partnership with Quarles & Brady in 1995, Attorney Elverman signed a one-page amendment no. 43 to the Quarles & Brady partnership agreement. The partnership agreement itself was not attached to amendment no. 43. By signing the amendment, Attorney Elverman agreed to be bound by the terms of the Quarles & Brady partnership agreement. A bit later, at the orientation meeting for new partners, Attorney Elverman received the partnership agreement. On page 3 of the partnership agreement, under the subheading "4. Profit and Loss. (a)" was the following statement:

> Fees payable to a Partner for serving as a trustee under a trust agreement or as a personal representative of the estate of a decedent and all other remuneration or income of any nature whatsoever received by any Partner in consideration of the practice of law or the

528

performance of legal services shall be turned over to the firm and shall constitute partnership income.

¶ 8. During the time Attorney Elverman was a partner at Quarles & Brady, he received three additional versions of the partnership agreement. Each of those amendments to the partnership agreement reiterated the requirement that trustee fees had to be paid to Quarles & Brady and were not to be retained by any individual attorney.

¶ 9. Donald W. Kastner (Kastner) hired Attorney Elverman to handle various legal matters concerning his estate plan, including three trusts. The first trust was the Donald W. Kastner Revocable Trust of 1994, which was established on September 8, 1994. The inventory balance on December 6, 1999, was $1,250,781.60. The second trust was the Donald W. Kastner Marital Trust established on April 10, 2001, which received cash distributions from the Donald W. Kastner Revocable Trust of 1994 of $426,735.31 on October 26, 2001. The third trust was the Donald W. Kastner Family Trust established on October 26, 2002, which received stock distributions from the Donald W. Kastner Revocable Trust of 1994 of $266,795.27 on October 26, 2001, and cash distributions from the Donald W. Kastner Revocable Trust of 1994 totaling $60,393.16 on October 30, 2001, October 31, 2001, and November 29, 2001, for a total of $327,188.43.

¶ 10. The initial trust documents named M&I Bank and Attorney Elverman as co-trustees. Kastner's son, Donald A. Kastner, replaced M&I Bank as a co-trustee a few years before Donald W. Kastner died. Co-trustee fees and fees for legal services were billed separately at Quarles & Brady.

¶ 11. It is undisputed that between 1999 and 2004 Attorney Elverman received $230,000 in co-trustee fees from the Kastner trusts. The co-trustee, Donald A. Kastner, received the same amount of fees. It is also undisputed that none of the trustee fees received by Attorney Elverman were turned over to Quarles & Brady. After Attorney Elverman resigned from Quarles & Brady, the trustee fees were returned to Quarles & Brady by offsets from the year-end compensation payment due to Attorney Elverman from Quarles & Brady and an additional cash payment of $2,423.24 from Attorney Elverman. Quarles & Brady subsequently reimbursed the Kastner trusts for the full $230,000.

¶ 12. When Attorney Elverman left Quarles & Brady, it was his belief that Donald A. Kastner wished Attorney Elverman to continue working for him. In November of 2004 Attorney Elverman represented Mr. Kastner in a guardianship hearing in connection with his mother.

¶ 13. Attorney Elverman did not include the trustee fees he received from the Kastner trusts for the years 1999 to 2001 on his tax returns. He said he forgot. He acknowledged he would have been prompted to report the trustee fees as income on his tax returns if Quarles & Brady's fiduciary accounting department had sent him 1099 forms, but he did not receive 1099 forms showing the trustee fees. Attorney Elverman said he failed to report trustee fee income from the Kastner trusts for 2002 and 2003 because he had numerous family financial demands and made the decision to pay the taxes later. Attorney Elverman filed amended tax returns and paid the additional taxes and interest on or before April 15, 2005. The OLR's investigation into Attorney Elverman's receipt of the trustee fees was pending at that time. Attorney Elverman has not been

audited by the Wisconsin Department of Revenue or the Internal Revenue Service (IRS) and has not been contacted with respect to paying any penalties, including a fraud penalty.

¶ 14. On May 3, 2006, the OLR filed a complaint alleging two counts of misconduct:

### COUNT 1

By receiving $230,000 in co-trustee fees for work performed on the Kastner trusts and converting those co-trustee fees to his personal use as opposed to turning those fees over to the firm as required and applicable under the firm's partnership agreement, Elverman engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).

### COUNT 2

By failing to report $230,000 in co-trustee fees he had converted from the Kastner trusts as income on state and federal returns filed in the applicable years, and instead belatedly reporting those fees on amended returns filed on or about April 15, 2005, Elverman engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).

¶ 15. As a sanction for the two counts of misconduct, the OLR asked that Attorney Elverman's license to practice law in Wisconsin be revoked.

¶ 16. Attorney Elverman filed an answer on May 25, 2006. The Honorable Kim M. Peterson was appointed referee. On November 9, 2006, Attorney Elverman filed a motion for partial summary judgment pertaining to count 1 of the complaint. The referee denied the motion.

¶ 17. A hearing was held before the referee on January 15 and 16, 2007.

¶ 18. Patrick M. Ryan (Ryan), Quarles & Brady's managing partner, said historically Quarles & Brady has followed the rule that all trustee or personal representative fees are the property of the partnership. Ryan testified while he was aware of situations where trustee fees were made payable to a partner, the practice was for the partner to endorse the fees over to the firm. He said he knew of no other partners except Attorney Elverman who kept the trustee fees.

¶ 19. Ryan testified that at partnership meetings, "the partners don't sit down and fly speck" the partnership agreements, and that he would be surprised if a partner would sit down and read the partnership agreement word for word. Ryan testified that Quarles & Brady operated on trust and did not check to see whether people were complying with the partnership agreement. He said the firm found it unnecessary to inquire of its lawyers whether they were retaining trustee fees because the partnership agreements historically forbade such a practice. He also said Quarles & Brady found no need to hold partnership orientation meetings or other meetings to discuss the trustee fee prohibition.

¶ 20. Paul Tilleman (Tilleman), a Quarles & Brady attorney who works primarily in the trusts and estates division and has served on the firm's executive committee, testified that over the years he was not aware of anyone other than Attorney Elverman who kept personal representative or trustee fees for themselves. Tilleman said he was asked by Ryan to investigate trust issues as they related to Attorney Elverman. Tilleman reviewed the Kastner trusts and determined that Attorney Elverman had been retaining trustee fees over the years. Tilleman's analysis of the situation led him to the conclusion that Attorney Elverman was financially better off keeping the trustee fees as opposed to reporting

them to the firm and later being paid under the firm's compensation formula. Tilleman admitted that he merely skimmed the partnership agreement when he first became a partner and simply "signed on the dotted line." Tilleman also said at no time during Attorney Elverman's tenure as a partner did the executive committee explain firm policy as to payment of trustee fees to Quarles & Brady attorneys.

¶ 21. Mary Koster (Ms. Koster), a trusts and estates paralegal at Quarles & Brady, worked with Attorney Elverman on the Kastner trusts. She testified it was her understanding that if trustee fees were paid directly to a Quarles & Brady attorney, the firm was to be notified in some manner, and the money was to ultimately go to Quarles & Brady. Ms. Koster testified that "early on" she had a conversation with Attorney Elverman about his practice of retaining the trustee fees personally as opposed to turning them over to Quarles & Brady. Ms. Koster said Attorney Elverman's response was that he would have his secretary do an interoffice memo to the firm indicating that the trustee fees were being retained by him. Ms. Koster testified she never saw such a memo. She also testified that she never mentioned Attorney Elverman's retention of the trustee fees to anyone else at Quarles & Brady.

¶ 22. Attorney Elverman testified that he "had the impression that other attorneys were taking trustee fees and not handing them over" but he did not have names of any particular attorneys who might have been doing this. Attorney Elverman denied having any conversation with Ms. Koster in which she told him that trustee fees were to be paid to Quarles & Brady.

¶ 23. Attorney Elverman said he "briefly reviewed" the partnership agreement and "kept it . . . buried" in his office desk. He said he "probably took all

533

of about 30 seconds to briefly review it, and that was the extent of it." He also admitted that although he was provided with three subsequent amendments to the partnership agreement, he did not review them at all. He said the reason he did not review the amendments was "[b]ecause I had an understanding that these documents were being revised largely, not solely, for retirement, and retirement was the last thing on my mind."

¶ 24. Attorney Elverman testified at the time he was receiving the trustee fees he was aware that under IRS rules the fees would have to be reported on his income tax returns, but he did not report them. He explained:

> [I]t wasn't until 2002 that I realized that that income had not been reported on my income tax returns. And in 2002, as I looked around and it was time to file my income tax returns, I had a lot of other family obligations in that I needed to take care of kids going to college, high school tuition, braces. And at that point, I had to make a decision, do we take the kids out of school and/or do I pay these taxes later on, which is ultimately what I did.

¶ 25. On January 15, 2007, the parties entered into a stipulation whereby the OLR's original complaint was amended by OLR withdrawing paragraph 17 of its complaint and substituting the following paragraph in its place as Count 2:

> By failing to report $230,000 in co-trustee fees he received from the Kastner trusts as income on state and federal returns he filed in the applicable years, Elverman violated a Supreme Court decision regulating the conduct of lawyers, *Disciplinary Proceedings Against Owens,* 172 Wis. 2d 54, 56–57, 492 N.W.2d 157 (1992), and thereby violated SCR 20:8.4(f).

¶ 26. As part of the stipulation, Attorney Elverman amended his answer to admit the allegations of substituted paragraph 17.

¶ 27. The referee filed her report on May 14, 2007. With respect to count 1 of the OLR's complaint, she made the following findings of fact:

> When Elverman became a partner at Quarles & Brady, he signed Amendment No. 43 to the Quarles & Brady partnership agreement. He briefly reviewed the partnership agreement, and deposited it in his office desk. The partnership agreement is a 21 page, single spaced document. Section three, pertaining to trustee fees, is one sentence in paragraph 4(a) entitled "Profit and Loss."
>
> The partnership agreement was distributed to the new partners at an orientation meeting, which Mr. Elverman believed would cover things he needed to know. The meeting dealt with how compensation would change from that of an associate to partner and overall structure of the firm, attorney fees and discussion regarding compensation and productivity credit. There was no discussion regarding personal representative or trustee fees. At no time during his partnership at Quarles & Brady, did Elverman attend a meeting where there was discussion of the need to turn over trustee fees.
>
> The practice regarding an attorney's ability to retain trustee fees at Quarles & Brady was not effectively communicated to the employees at Quarles & Brady, and several employees were confused regarding the firm's policy on this issue.
>
> Quarles & Brady's fiduciary accounting department administered the Kastner trust, and several employees within that department were aware that Mr. Elverman was personally retaining the Kastner trustee fees. Mr. Elverman made no effort to hide the fact that

535

he was personally retaining the Kastner trustee fees. At no time did any Quarles & Brady employee report Mr. Elverman's conduct to a superior, or tell Mr. Elverman that his conduct was improper.

The Kastner matter was the first matter where Mr. Elverman actually administered an estate and trust and acted as a fiduciary.

After Mr. Elverman resigned from Quarles & Brady, effective December 31, 2004, Mr. Elverman was called into Mr. Ryan's office for a meeting. Mr. Ryan was the managing partner at Quarles & Brady at the time. At that meeting, Mr. Ryan asked Mr. Elverman whether he received and retained trustee fees from the Kastner trusts. Mr. Elverman, who was not given prior notice of the purpose of the meeting, admitted receiving the fees. At that time, Mr. Ryan informed Mr. Elverman that his retention of the trustee fees was contrary to the terms of the partnership agreement, told Mr. Elverman that he should retain an attorney, and informed Mr. Elverman that Quarles & Brady had already retained an attorney in the matter. Mr. Elverman stated at the meeting that he would return the fees to Quarles & Brady as soon as possible.

Prior to the meeting with Mr. Ryan, Mr. Elverman was not aware of the specific terms of the partnership agreement which required him to turn over the trustee fees to Quarles & Brady.

Subsequently, Elverman resigned from Quarles & Brady and the trustee fees were returned by offsets and a cash payment of $2,423.24.

¶ 28. Based on those findings of fact, the referee made the following conclusion of law with respect to count 1 of the complaint:

Elverman did not engage in conduct involving dishonesty, deceit, fraud or misrepresentation in viola-

536

tion of SCR 20:8.4(c) because he was not actually aware that his retention of trustee fees from the Kastner trusts was in violation of his duties to his Quarles & Brady partners.

¶ 29. With respect to count 2 of the complaint, in an amended order issued on June 6, 2007, the referee made the following conclusion of law:

> By failing to report co-trustee fees he received from the Kastner trusts as income on state and federal returns he filed for the years 1999–2003, Elverman violated a Supreme Court decision regulating the conduct of lawyers, *Disciplinary Proceedings Against Owens,* 172 Wis. 2d 54, 56–57, 492 Wis. 2d 157 (1992), and thereby violated SCR 20:8.4(f).

¶ 30. With respect to her findings of fact and conclusion of law as to count 1, the referee said while it was undisputed that Attorney Elverman's failure to turn over the trustee fees to Quarles & Brady was a breach of his partnership agreement, "the question to be answered is whether Mr. Elverman's failure was intentional—the result of deceit or dishonesty. In other words, did he take these fees, knowing that they properly belonged to Quarles & Brady, or did he simply make a mistake?" The referee noted it was the OLR's burden to prove by clear and convincing evidence that Attorney Elverman acted with a fraudulent or deceitful intent. Based on the evidence presented, she concluded the OLR failed to meet that burden.

¶ 31. While the referee agreed that there was merit to the OLR's argument that it was inconceivable Attorney Elverman did not know he had to turn over the trustee fees to the firm, and while such an inference might be appropriate, "I believed Mr. Elverman's testimony when he testified that he simply did not review

537

the agreement and did not read the provision regarding trustee fees. ... [B]oth Mr. Tilleman and Mr. Ryan confirmed that many other Quarles & Brady attorneys don't read the partnership agreement in detail either." The referee also said there was no evidence that Attorney Elverman learned through other sources that he was not to retain trustee fees personally, and she said there was confusion among employees at Quarles & Brady regarding the policy of retaining trustee fees. The referee said:

> Perhaps the most convincing evidence of fraud presented by the OLR comes in the testimony of Ms. Koster, who testified that she told Mr. Elverman that trustee fees are to be paid to Quarles & Brady, and the firm notified of his receipt of such fees. She also stated that Mr. Elverman indicated that he would have his secretary send a note to the firm with regard to his receipt of these fees. Mr. Elverman denies that such a conversation took place, and that he promised to prepare a memo to the firm.

> I tend to believe Mr. Elverman's testimony that this conversation did not take place. First, if this conversation did occur "early on," as Ms. Koster testified, one would think that Mr. Elverman, intent on violating the policy without the firm's knowledge, would have been concerned that he would be "found out." In other words, if Ms. Koster found out he was keeping these fees in violation of the partnership agreement, Mr. Elverman certainly would have been concerned that she would tell the partners, and he would be caught. If he were concerned about such an outcome, I believe it is logical to presume that he would have made more of an effort to hide his conduct, or keep Ms. Koster from telling others about his conduct. For example, he might have used an outside accounting firm to hide his receipt of these fees or asked Ms. Koster to keep this information secret. Mr. Elverman did not take any action, however,

and kept his conduct out in the open, for all to see. This conduct seems inconsistent with Ms. Koster's testimony that Mr. Elverman was aware he should not retain these trustee fees.

In addition to the foregoing, Mr. Elverman's conduct also belies a fraudulent motive. First, I find it persuasive that Mr. Elverman did not make an effort to hide his receipt of trustee fees from the Kastner trusts, and in fact, his receipt of these fees was out in the open and known by many Quarles & Brady employees. Not only does this openness suggest that Mr. Elverman was unaware that his conduct was improper or in violation of his partnership agreement, as indicated above, it also is indicative of a Quarles & Brady policy that might not have been as clear as the firm would like to think. In other words, if everyone at Quarles & Brady were aware that an attorney's retention of such fees was wrongful and improper, why didn't anyone bring the matter of Mr. Elverman's retention of these fees to the attention of Quarles & Brady management? By failing to raise this red flag to management, the employee conduct seems to indicate some ambiguity in the policy. It is quite possible that Mr. Elverman's conduct was not reported to management because the employees that were aware of his conduct were not sure whether his conduct was wrongful.

The OLR's suggestion that Mr. Elverman's conduct was "out in the open" so that he could later, if caught, maintain plausible deniability, is a stretch. In fact, if everyone was well aware of Quarles & Brady's policy that receipt and retention of trustee fees was improper, this plan wouldn't work, since Mr. Elverman's conduct would be "found out" right away. There are many people who were aware of Mr. Elverman's receipt of these trustee fees, . . . . With all of these individuals aware of Mr. Elverman's conduct, and none reporting it to Quarles & Brady management, it indicates confusion

539

regarding the legitimacy of Mr. Elverman's receipt of trustee fees.

Moreover, I don't believe that there can be a violation of SCR 20:8.4(c) based only upon Mr. Elverman's receipt of trustee fees in violation of the Quarles & Brady partnership agreement. Rather, to prove a violation of SCR 20:8.4(c) the OLR must prove that Mr. Elverman's receipt of those fees involved dishonest, deceitful or fraudulent conduct. In this case, I don't believe that the OLR has demonstrated by clear and convincing evidence that Mr. Elverman engaged in fraudulent, dishonest or deceitful conduct. He did not lie to anyone when confronted about receiving the fees, nor did he lie about taking the fees in the first place. The fact of Mr. Elverman's receipt of the trustee fees was out in the open, and well known to those in the Quarles & Brady fiduciary accounting department, as well as the co-trustee, Mr. Kastner. When Mr. Elverman was informed that his receipt of these fees was a violation of the partnership agreement, he returned the fees immediately.

. . .

In sum, while there is some evidence that tends to demonstrate Mr. Elverman's misconduct in the receipt of trustee fees contrary to Quarles & Brady's written partnership agreement, I don't believe that the evidence rises to the level of clear and convincing, and as such, I find that there has been no violation of SCR 20:8.4(c).

¶ 32. With respect to Attorney Elverman's admitted violation of SCR 20:8.4(f), the referee concluded that a public reprimand was appropriate. She pointed to a number of cases where a public reprimand was imposed in spite of facts more egregious than those involved here. *See In re Disciplinary Proceedings*

540

*Against Young,* 2006 WI 109, 296 Wis. 2d 36, 718 Wis. 2d 717, in which the attorney failed to file tax returns from 1996 to 2003, failed to respond to OLR investigations, and failed to file tax returns and pay taxes by the time of the OLR hearing, and *Public Reprimand of Gwin* (BAPR 2003–12). The referee said, "a public reprimand is appropriate here where Mr. Elverman admitted [he] failed to file returns for the applicable years, but he also amended his returns and paid all taxes and interest before the OLR's investigation of the tax matter, and fully cooperated with the OLR in its investigation."

¶ 33. The OLR argues that the referee's factual finding that Attorney Elverman did not know he was not entitled to retain the trustee fees is clearly erroneous, and it asks this court to overturn it and find that Attorney Elverman did in fact violate SCR 20:8.4(c) as alleged in the OLR's complaint. Regardless of what this court does with respect to count 1, the OLR asserts that a public reprimand is an insufficient sanction and a suspension of Attorney Elverman's license is appropriate.

¶ 34. The OLR notes the unambiguous language in all versions of the Quarles & Brady partnership agreement prohibited an attorney from retaining personal representative or trustee fees, and it says the clear prohibitions against retaining such fees are readily found in all versions of the partnership agreement, especially when one uses the index contained in the later partnership documents. The OLR argues the referee's conclusion that Attorney Elverman did not know the terms of the partnership agreement is wrong as a matter of simple contract law and is clearly erroneous.

¶ 35. The OLR argues the referee's finding that there was confusion among Quarles & Brady employees regarding the policy of retaining trustee fees is contrary

to the evidence. It points to testimony of Ryan and Tilleman who both said they had never heard of any other partners keeping personal representative or trustee fees for themselves. It also points to Ms. Koster's testimony that she had a conversation with Attorney Elverman about the trustee fees.

¶ 36. The OLR argues the referee gave undue consideration to the fact that Attorney Elverman's conduct was open and that others could have or did know about it. The OLR asserts the referee ignored the testimony of Tilleman and Ryan that the firm operated on trust and assumed their partners would be following the rules set forth in the partnership agreement. It says the individuals who may have been aware of Attorney Elverman's receipt of the trustee fees included secretaries and staff, none of whom had supervisory authority over him.

¶ 37. With respect to count 2, the OLR argues that Attorney Elverman's tax violations were "egregious." It says that Attorney Elverman, a trained lawyer and accountant, consciously chose not to include trustee fees totaling $230,000 on his tax returns. It argues Attorney Elverman's claimed entitlement to the trustee fees is inconsistent with his failure to report the funds on his tax returns. While the OLR notes that this court is free to impose whatever discipline it deems appropriate, it argues that Attorney Elverman's misconduct warrants a meaningful license suspension.

¶ 38. Attorney Elverman argues that the referee correctly concluded that the OLR failed to prove count 1 by clear, satisfactory and convincing evidence. Attorney Elverman argues the referee's finding that he was not aware he was required to turn over the trustee fees to the firm is supported by the evidence, and he also

asserts the referee made appropriate credibility determinations supported by the evidence.

¶ 39. As to count 2, Attorney Elverman argues that this court should adopt the referee's recommendation of a public reprimand as the sanction for his violation of SCR 20:8.4(f). He says he filed amended tax returns and paid taxes on the trustee fees before the OLR contacted him, and he points out that he has not been prosecuted or penalized by either federal or state taxing authorities.

¶ 40. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 41. The OLR's argument that the referee's findings of fact as to count 1 were clearly erroneous turn largely on credibility determinations, particularly as to the alleged conversation between Ms. Koster and Attorney Elverman. The referee specifically found Attorney Elverman's testimony in this regard to be more credible than Ms. Koster's. The test for an appellate court to apply in matters of witness credibility is whether "the trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *State v. Oliver,* 84 Wis. 2d 316, 323, 267 N.W.2d 333 (1978), quoting *Lock v. State,* 31 Wis. 2d 110, 114–15, 142 N.W.2d 183 (1966). While we find Attorney Elverman's

claimed failure to read any of the versions of the partnership agreement with respect to partners' expected handling of trustee fees, and his further failure to inquire of other partners as to how such fees were to be handled rather troubling, based on the record before us, we are unable to declare any of the referee's findings clearly erroneous. Consequently, we conclude that the referee's findings of fact as to both counts 1 and 2 are not clearly erroneous, and we adopt them. We also agree with the conclusions of law that flow from the referee's findings of fact.

¶ 42. The remaining issue before us is the appropriate sanction for Attorney Elverman's admitted misconduct in failing to report as income the co-trustee fees he received for the years 1999 to 2003. In support of his argument that a public reprimand is appropriate, Attorney Elverman cites previous disciplinary cases in which a public reprimand was issued, including *In re Disciplinary Proceedings Against Lex*, 2000 WI 49, 235 Wis. 2d 381, 611 N.W.2d 456, and *In re Disciplinary Proceedings Against Young*, 2006 WI 109, 296 Wis. 2d 36, 718 N.W.2d 717. In support of its argument that a suspension is warranted, the OLR cites *In re Disciplinary Proceedings Against Owens*, 172 Wis. 2d 54, 56–57, 492 N.W.2d 157 (1992), and *In re Disciplinary Proceedings Against Washington*, 2007 WI 65, 301 Wis. 2d 47, 732 N.W.2d 24. Based on our review of the record, we conclude that this case falls somewhere between the conduct at issue in *Lex, Young,* and *Owens,* and that at issue in Washington and *In re Disciplinary Proceedings Against Phillips,* 2007 WI 63, 301 Wis. 2d 33, 732 N.W.2d 17.

¶ 43. Attorney Lex intentionally failed to timely file Wisconsin income tax returns for the years 1991 and 1993 through 1995. In addition, he had received 24

544

separate assessments from the Wisconsin Department of Revenue from 1983 through 1998 for failing to file either individual income tax returns or employee withholding tax returns. Attorney Lex ultimately filed the tax returns and completed an agreement with the Department of Revenue to pay all taxes, interest and penalties for the years in question. The referee in *Lex* also found that Attorney Lex experienced financial and professional hardships during the period for which he failed to file tax returns, that he was not prosecuted criminally, and that he cooperated with the investigation into his conduct.

¶ 44. Attorney Young failed to file state income tax returns for the years 1996 through 2003. The OLR and Attorney Young filed a stipulation in which they agreed an appropriate level of discipline would be a public reprimand. Although this court said it was troubled by the fact that there was no evidence in the record that Attorney Young had worked toward resolving the issue of failing to file tax returns and to pay the tax due, it agreed that a public reprimand was an appropriate level of discipline. However, it imposed conditions on Attorney Young's license to ensure that he made progress on paying his tax delinquencies.

¶ 45. Attorney Owens intentionally failed to file state income tax returns for four years and failed to timely file tax returns for ten years. In addition, he failed to cooperate with the investigation into his misconduct. This court suspended Attorney Owens' license to practice law for 60 days.

¶ 46. Attorney Washington entered a guilty plea and was convicted of attempting to evade and defeat the payment of a large portion of her federal income taxes for the year 1998. Her license was suspended for a period of 18 months. In *Phillips,* the attorney's license

was suspended for three years for engaging in a willful attempt at federal income tax evasion for which he had been convicted and sentenced.

¶ 47. Both Attorneys Washington and Phillips were found to have violated SCR 20:8.4(b), which states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. It is important to note that Attorney Elverman was not found to have violated that supreme court rule, but rather was found to have violated SCR 20:8.4(f), as were Attorneys Young and Lex.

¶ 48. In our view, Attorney Elverman's failure to report the trustee fees on his income tax returns falls into two separate categories, the first encompassing tax years 1999 through 2001, and the second encompassing tax years 2002 and 2003. For the earlier years, Attorney Elverman claims that he simply forgot to report the trustee fees as income. If those three tax years were the only ones at issue, we would be more inclined to view this as a *Lex* or *Young* situation and impose a public reprimand. For the tax years 2002 and 2003, however, Attorney Elverman freely admits that he knew he was supposed to report the trustee fees as income but chose not to do so because of other personal financial obligations. In addition, we note that it was not until April of 2005, after the OLR had commenced its investigation, that Attorney Elverman took the affirmative step of filing amended income tax returns for all of the years in question. It is Attorney Elverman's post-2001 conduct, whereby he consciously chose not to report the trustee fees as income even though he knew he was supposed to do so, that takes this case outside the realm of a *Lex* or *Young* situation and moves it on the continuum toward *Washington* and *Phillips*.

546

¶ 49. Attorney Elverman's failure to report the trustee fees as income on his tax returns is a serious failing. In light of the seriousness of his misconduct and particularly given the fact that he knowingly failed to report the fees as income until he was under investigation by the OLR, we believe that the public reprimand recommended by the referee is too lenient. Instead, we conclude that a nine-month suspension of Attorney Elverman's license to practice law in this state is appropriate. In addition, we agree with the referee that Attorney Elverman should pay the full costs of the proceeding.

¶ 50. IT IS ORDERED that the license of Jeffrey L. Elverman to practice law in Wisconsin is suspended for nine months commencing May 12, 2008.

¶ 51. IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey L. Elverman pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Jeffrey L. Elverman to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 52. IT IS FURTHER ORDERED that Jeffrey L. Elverman comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 53. ANNETTE KINGSLAND ZIEGLER, J., did not participate.