# Supreme Court of Wisconsin

| | |
|---|---|
| CASE No.: | 2011AP1400-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Jeffrey L. Elverman, Attorney at Law: |
| | Office of Lawyer Regulation, |
| | Complainant-Respondent, |
| | v. |
| | Jeffrey L. Elverman, |
| | Respondent-Appellant. |

---

DISCIPLINARY PROCEEDINGS AGAINST ELVERMAN

---

| | |
|---|---|
| OPINION FILED: | March 25, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

---

ATTORNEYS:

For the respondent-appellant, there were briefs by *Jeffrey L. Elverman*, Genoa City.


For the Office of Lawyer Regulation, there was a brief by *Anne MacArthur* and *Anne MacArthur Law, LLC*, Madison.

**2014 WI 15**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2011AP1400-D

STATE OF WISCONSIN  :  IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Jeffrey L. Elverman, Attorney at Law:**

**Office of Lawyer Regulation,**

**Complainant-Respondent,**

**v.**

**Jeffrey L. Elverman,**

**Respondent-Appellant.**

**FILED**

**MAR 25, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. Attorney Jeffrey L. Elverman appeals from that portion of a referee's report recommending that his license to practice law be revoked effective the date of this court's order rather than making revocation retroactive to the date that his prior nine-month license suspension ended. He also appeals the amount of restitution recommended by the referee.

¶2 Upon careful review of this matter, we agree with the referee that given the seriousness of Attorney Elverman's misconduct, the revocation of his license to practice law in Wisconsin should not be retroactive. We agree with Attorney Elverman and the Office of Lawyer Regulation (OLR) that restitution should be ordered in the same amount and upon the same terms as that ordered by the circuit court in Attorney Elverman's underlying criminal case. Finally, we find it appropriate to assess the full costs of this proceeding, which are $19,558.08 as of September 5, 2013, against Attorney Elverman.

¶3 Attorney Elverman was admitted to practice law in Wisconsin in 1986. On May 12, 2008, Attorney Elverman's license was suspended for nine months for failure to report co-trustee fees he received as income in his state and federal income tax returns for the years 1999 to 2003. In re Disciplinary Proceedings Against Elverman, 2008 WI 28, 308 Wis. 2d 524, 746 N.W.2d 793. The nine-month suspension would have ended February 13, 2009. Attorney Elverman's license remains suspended.

¶4 The most serious counts of misconduct alleged in the OLR's amended complaint, which was filed on July 10, 2012, arose out of Attorney Elverman's representation of D.P. Attorney Elverman was introduced to D.P., who was 82 years old, in 2000, when he was a partner at Quarles & Brady. D.P.'s investment advisor introduced them. D.P., a widow, wanted Attorney Elverman to prepare an estate plan for her. She had assets of

2

between $1,000,000 and $2,000,000, including substantial liquid assets.

¶5  In May 2000 D.P. signed various estate planning documents prepared by Attorney Elverman, including a durable financial power of attorney and a durable power of attorney for health care.  The financial advisor, Leonard Campbell, was D.P.'s agent under both powers of attorney, with Attorney Elverman designated as successor agent.

¶6  Attorney Elverman also drafted a will for D.P., along with a revocable trust.  The trust established terms for its administration during D.P.'s lifetime and provided for the creation of the D.P. Foundation (the Foundation) upon her death.

¶7  D.P. was the initial trustee of the revocable trust. Campbell was the successor trustee, and Attorney Elverman was the successor trustee if Campbell did not act or ceased to act. Campbell was the initial trustee for the Foundation, and Attorney Elverman was the successor trustee.

¶8  By late 2000, D.P.'s mental acuity began to decline as a result of Alzheimer's disease.  During 2001, Campbell resigned as D.P.'s agent under her powers of attorney, and Attorney Elverman became D.P.'s agent for both finances and health care.

¶9  In February 2001 one of D.P.'s physicians wrote to another of her doctors noting he had spoken with Attorney Elverman and that D.P.'s ability to think cognitively was substantially impaired.  Around this time, Attorney Elverman contracted with Professional Organizers Unlimited to assist D.P. with her activities of daily living.  The principal of

3

Professional Organizers Unlimited, Marion Whelpley, continued to provide services to D.P. through 2008.

¶10 By March of 2003, D.P.'s Alzheimer's disease had progressed to the stage that she was no longer competent to manage her personal or financial affairs. On March 24, 2003, at Attorney Elverman's request, Dr. Brian Hirano, another of D.P.'s physicians, provided Attorney Elverman with a certification of D.P.'s incapacitation which was sent by facsimile to Attorney Elverman's office at Quarles & Brady. In July and September 2003, Dr. Hirano sent letters to D.P. explaining that her memory would continue to decline over time. Attorney Elverman received copies of those letters.

¶11 In or about August of 2003, Attorney Elverman drafted an amendment to D.P.'s revocable trust making him trustee of her trust and the Foundation. This amendment gave him the power to appoint a successor trustee of each entity and gave him complete control over the disposition of D.P.'s estate during her life and after her death. D.P. signed the amendment on August 14, 2003, several months after Dr. Hirano had provided Attorney Elverman with a certification of D.P.'s incapacitation.

¶12 In or about September of 2004, concerns were raised at Quarles & Brady as the result of allegations that Attorney Elverman's time records and billing were false. Upon review of the firm's records, Quarles & Brady learned that Attorney Elverman had received $230,000 in co-trustee fees from the Donald W. Kastner Trusts that he had not turned over to Quarles & Brady. Attorney Elverman also failed to originally report the

receipt of the Kastner trustee income on his tax returns. This failure formed the basis for the 2008 license suspension.

¶13 After conducting an inquiry in the Kastner matter, Quarles & Brady asked that Attorney Elverman provide a sworn statement certifying all circumstances where he had acted or was acting as a trustee. In the statement he submitted to Quarles & Brady in October 2004, Attorney Elverman failed to disclose that he was acting as D.P.'s trustee.

¶14 Between December 12, 2001, and September 23, 2004, Attorney Elverman was paid at least $604,000 by D.P., purportedly for performing 30 to 35 hours per week of personal services that he billed at $150 an hour.

¶15 In November 2004, after leaving Quarles & Brady, Attorney Elverman joined Michael Best & Friedrich. He failed to disclose his relationship with D.P. to Michael Best & Friedrich, even though the firm required new members to identify all existing client relationships. Attorney Elverman's employment at Michael Best & Friedrich was terminated when the firm became aware of the disciplinary proceedings against him involving the Kastner trusts.

¶16 In June 2008, following his suspension, Attorney Elverman filed his SCR 22.26[1] affidavit with the OLR, but he failed to list D.P. as one of his clients.

---

[1] SCR 22.26 states, in relevant part:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

¶17 After his license was suspended, Attorney Elverman resigned as D.P.'s agent under her durable financial power of attorney and appointed Dwayne Johnson, an accountant he knew, as the new agent. Attorney Elverman also resigned as trustee of D.P.'s revocable trust and of the Foundation and appointed Johnson trustee of each entity. Attorney Elverman and Johnson had an agreement whereby Johnson would resign and reappoint Attorney Elverman to again be D.P.'s agent under the durable powers of attorney, and trustee of D.P.'s revocable trust and of the Foundation, when Attorney Elverman's license to practice law was reinstated.

¶18 In July of 2008, while D.P. was living in an assisted living facility, a social worker raised concerns about the enforceability of D.P.'s durable power of attorney for health care because both Campbell and Attorney Elverman had witnessed the document, making it invalid under Wisconsin law. In September 2008 the social worker filed a petition for the appointment of a guardian of D.P.'s person and estate.

------

. . . .

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing . . . :

. . . .

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

6

¶19 In October 2008 in response to the guardianship petition, Attorney Elverman executed a document attempting to withdraw his resignation as D.P.'s financial power of attorney. He also filed an objection to the guardianship petition and filed his own guardianship petition asking that he be named the guardian of D.P.'s person and estate.

¶20 On November 13, 2008, Milwaukee County Circuit Judge John DiMotto issued an order appointing Supportive Community Services (SCS) as D.P.'s temporary guardian. Judge DiMotto held that Attorney Elverman was not an interested person in the guardianship proceeding and thus had no standing in the matter since he had resigned as D.P.'s financial power of attorney and because D.P.'s health care power of attorney was invalid. Judge DiMotto held that Attorney Elverman's attempt to withdraw his resignation as D.P.'s financial power of attorney was improper, as was Attorney Elverman's attempt to appoint Johnson as D.P.'s agent under her durable financial power of attorney, because Attorney Elverman lost the power to appoint a successor agent when he resigned as D.P.'s agent.

¶21 On December 3, 2008, upon SCS's petition, Milwaukee County Probate Court Commissioner Patrice A. Baker determined that Attorney Elverman's attempt to resign as trustee of D.P.'s trust and appoint Johnson in his place was ineffective because Attorney Elverman's resignation only referred to the trustee appointment under the article of the trust creating the Foundation upon D.P.'s death and did not refer to the article governing appointment of the trustee of the trust administered

during D.P.'s lifetime. The court commissioner ordered that Attorney Elverman be removed as trustee of the trust, vacated his appointment of Johnson as trustee of the Foundation, and appointed SCS the trustee of each entity.

¶22 On December 5, 2008, Judge DiMotto issued an order appointing SCS as D.P.'s permanent guardian, after finding that Attorney Elverman had "engaged in questionable conduct as it relates to the ward, including not making her a client of Michael Best & Friedrich when he became a partner in the firm." Judge DiMotto ordered SCS, as D.P.'s guardian, to obtain accountings from Attorney Elverman and Johnson, finding it was "essential that Jeffrey L. Elverman account to a third party for his actions as trustee/agent for the ward." At Judge DiMotto's direction, SCS began an investigation into Attorney Elverman's conduct in relation to D.P.

¶23 A forensic accountant retained by SCS reviewed Attorney Elverman's billing records at Quarles & Brady from January 2002 through September 2004, the last month he billed time at Quarles & Brady before his departure. During all of the time Attorney Elverman was allegedly performing services for D.P., he was employed on a full-time basis as an equity partner at Quarles & Brady. Attorney Elverman never disclosed to Quarles & Brady that he was performing services for D.P., nor did he report his receipt of income from her to the firm.

¶24 Adding the hours he billed at Quarles & Brady to the hours he claimed to have worked for D.P., Attorney Elverman would have worked 75 hours a week, 52 weeks a year, in 2002; 74

hours a week, 52 weeks a year, in 2003; and 54 hours a week in 2004. While at Quarles & Brady, Attorney Elverman prepared, or had prepared at his direction, four fake invoices purportedly on behalf of Quarles & Brady, representing legal work he had done on D.P.'s behalf, which D.P. paid. The fake invoices were generated on Quarles & Brady computers but were prepared outside of the usual billing system employed by the firm. Two checks drawn on D.P.'s account correspond to the dates and amounts of the fake invoices and were made payable to, and endorsed by, Attorney Elverman. Two other checks drawn on D.P.'s account correspond to the dates and amounts of the fake invoices, but the payee is unknown. One of the two checks is in the exact amount of a deposit into Attorney Elverman's checking account that occurred within two weeks of the date of one of the fake invoices.

¶25 As a result of Quarles & Brady's inquiry into Attorney Elverman's billing practices, Quarles & Brady determined it had not received any payment regarding the fake invoices, nor were there any time entries in its billing system matching them. Quarles & Brady's further review of Attorney Elverman's time entries in the firm's billing system indicated that for certain days, the aggregate of the hours logged on the system for Attorney Elverman's work for the firm, plus the hours indicated in the fake invoices, totaled more than 20 hours in a day and in one case more than 24 hours in a day.

¶26 Attorney Elverman did not include any of the income he received from D.P. on the state and federal tax returns he

9

originally filed in 2001, 2002, or 2003. He underreported income he received from D.P. on his original state and federal tax returns filed in 2004.

¶27 In September of 2009, the OLR's investigative committee asked that Attorney Elverman provide copies of his income tax returns for 2001 through 2004, or provide an authorization for the OLR to obtain the returns from the Department of Revenue. Attorney Elverman failed to respond to this request until March of 2010, and then claimed there was no Department of Revenue form authorizing release of tax returns. The OLR ultimately obtained copies of the returns by subpoenaing Attorney Elverman's accountant.

¶28 On December 6, 2010, Attorney Elverman was charged with violating Wis. Stat. § 943.20(1)(a), theft of movable property in excess of $10,000, a Class G felony, in Milwaukee County circuit court as a result of his conduct regarding D.P.

¶29 The OLR filed a complaint against Attorney Elverman on June 17, 2011. Attorney Elverman filed a motion asking that the OLR proceedings be stayed pending disposition of the criminal case. This court granted the motion on October 25, 2011. On December 15, 2011, a jury found Attorney Elverman guilty of theft of movable property in excess of $10,000. A judgment of conviction was entered against him on March 13, 2012. A sentence consisting of five years of initial confinement and five years of extended supervision was imposed and stayed and Attorney Elverman was placed on probation for five years, with seven months in the House of Corrections with work release

privileges. Attorney Elverman was ordered to make restitution in the amount of $325,000, less payments already made. Specifically, the Department of Corrections was ordered to facilitate payment to the victim[2] in the amount of $1,500 per month during 2012, $2,000 per month during 2013, and $3,000 per month during 2014, until paid in full.

¶30 James J. Winiarski was appointed referee in the matter. On July 10, 2012, the OLR filed an amended complaint. The amended complaint alleged the following counts of misconduct with respect to Attorney Elverman's dealings with D.P.:

> [COUNT ONE] By using his position of trust as [D.P.'s] lawyer, trustee, and financial power of attorney to take at least $604,000 from her between December 2001 through September 2004, [Attorney] Elverman engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[3]

> [COUNT TWO] By collecting fees totaling at least $604,000 from [D.P.] from December 2001 to September 2004, for which he has inadequate substantiating records, [Attorney] Elverman charged an unreasonable fee, in violation of former SCR 20:1.5(a), effective prior to July 1, 2007.[4]

---

[2] The record indicates that D.P. is now deceased.

[3] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[4] Former SCR 20:1.5(a) (effective through June 30, 2007) provided as follows:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

11

[COUNT THREE] By concealing from [Quarles & Brady (Q&B)] the fees he earned from [D.P.], and by concealing from Q&B and [Michael Best & Friedrich] his position as trustee for [D.P.'s] Trust, [Attorney] Elverman violated a standard of conduct set forth by the Wisconsin Supreme Court in Disciplinary Proceedings Against Shea, 190 Wis. 2d 560, 527 N.W.2d 314 (1995), actionable via SCR 20:8.4(f).[5]

[COUNT FOUR] By failing to report on his federal and state income tax returns for 2001, 2002, and 2003 any of the income he received from [D.P.], and by underreporting the income he received from [D.P.] on his original federal and state income tax returns for 2004, [Attorney] Elverman violated a standard of conduct set forth by the Wisconsin Supreme Court in Disciplinary Proceedings Against Owens, 172

_____

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[5] SCR 20:8.4(f) states it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . . ."

Wis. 2d 54, 56-57, 492 N.W.2d 157 (1992), actionable via SCR 20:8.4(f).

[COUNT FIVE] By failing to promptly comply with OLR's Investigative District Committee's request for his tax returns or an authorization to obtain copies of them, [Attorney] Elverman failed to cooperate with OLR's investigation, in violation of SCR [22.03(6)],[6] actionable via SCR 20:8.4(h).[7]

¶31 The amended complaint also alleged that on May 30, 2011, Attorney Elverman was arrested as the result of a domestic violence incident that occurred at the home of H.H., where Attorney Elverman was living with H.H. and her two minor children, who were both home at the time of the incident. On July 7, 2011, Attorney Elverman was charged with disorderly conduct, a Class B misdemeanor. He entered a guilty plea to that charge on July 15, 2011.

¶32 Attorney Elverman failed to report his conviction to the OLR and the clerk of this court within five days of the entry of judgment of conviction. On July 26, 2011, after learning of Attorney Elverman's disorderly conduct conviction, the OLR notified Attorney Elverman by first-class mail to his last known address that the OLR was investigating his criminal

---

[6] SCR 22.03(6) provides as follows: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[7] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

conduct in the disorderly conduct case and Attorney Elverman's failure to report the conviction, and that his response to the OLR's investigation was required by August 18, 2011. Attorney Elverman failed to respond to the OLR's letter.

¶33 On August 23, 2011, the OLR sent Attorney Elverman a second letter informing him that failure to timely respond to its investigation constituted misconduct and giving him until September 2, 2011, to respond. Attorney Elverman finally responded on September 7, 2011, but the OLR concluded that his response failed to fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct.

¶34 The OLR's amended complaint alleged the following counts of misconduct with respect to the disorderly conduct conviction:

> [COUNT SIX] By engaging in conduct resulting in his conviction for disorderly conduct in a domestic violence situation, [Attorney] Elverman engaged in criminal conduct that reflects adversely on his fitness as a lawyer in violation of SCR 20:8.4(b).[8]

> [COUNT SEVEN] By failing to notify OLR and the Clerk of the Supreme Court of his conviction for disorderly conduct within five (5) days of its entry, [Attorney] Elverman violated SCR 21.15,[9] enforced via SCR 20:8.4(f).

---

[8] SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

[9] SCR 21.15 provides, in relevant part, as follows:

> (5) An attorney found guilty or convicted of any crime on or after July 1, 2002, shall notify in writing the office of lawyer regulation and the clerk

14

[COUNT EIGHT] By failing to timely respond to OLR's investigation in the criminal [disorderly conduct] matter within 20 days of receiving notice of the investigation, and by failing to fully and fairly disclose all facts and circumstances pertaining to it when he did respond, [Attorney] Elverman violated SCR 22.03(2),[10] enforced via SCR 20:8.4(h).

¶35 On February 12, 2013, the parties filed a stipulation whereby Attorney Elverman withdrew his answer to the amended complaint and pled no contest to all eight counts alleged in the OLR's amended complaint. Attorney Elverman and the OLR jointly recommended that the sanction in this matter be a license revocation imposed retroactively to February 13, 2009, so as to run consecutive to the prior nine-month suspension. The stipulation says, "The disciplinary conduct at issue in this

---

of the Supreme Court within 5 days after the finding or conviction, whichever first occurs. The notice shall include the identity of the attorney, the date of finding or conviction, the offenses, and the jurisdiction. An attorney's failure to notify the office of lawyer regulation and clerk of the supreme court of being found guilty or his or her conviction is misconduct.

[10] SCR 22.03(2) states:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

case occurred during roughly the same period of time as the matters addressed in the prior disciplinary matter, and occurred prior to the imposition of discipline in the previous disciplinary case." The parties also jointly recommended that restitution be imposed "as ordered by the Milwaukee County Criminal Court . . . ."

¶36 The referee filed his report and recommendation on April 3, 2013. The referee found that Attorney Elverman engaged in the eight counts of misconduct alleged in the OLR's amended complaint. While both the OLR and Attorney Elverman recommended license revocation retroactive to February 13, 2009, the referee found the misconduct serious enough to recommend that the starting date for the revocation be the date this court enters the order of revocation. The referee explained:

> In this case, [Attorney] Elverman stole money from a client. His attempts to cover up his thefts were well planned and occurred over a significant period of time. He deceived two law firms by failing to report income and by using fake invoices. He failed to report taxable income.
>
> Most of the misconduct in this case occurred after the misconduct in the previous disciplinary case. . . . While Q&B was investigating [Attorney] Elverman's conduct in the Kastner case . . . [Attorney] Elverman was actively involved in covering up his conduct in this disciplinary case.
>
> I realize the Wisconsin Supreme Court customarily considers retroactive commencement of the date for license revocation if the attorney has not been licensed to practice since an earlier date. However, given the extreme seriousness and the distinctly separate and consecutive misconduct in this case, I do not believe [Attorney] Elverman should be given any credit for the time since his license suspension of

16

nine months which commenced May 12, 2008, nor do I believe [Attorney] Elverman should be given credit for the fact that he has not practiced law for an extended period of time.

¶37 Turning to the issue of restitution, the referee said:

The pleadings and filings in this case do not disclose to me what, if any, restitution was ordered by the criminal court upon [Attorney] Elverman's convictions. In any case, the factual agreement between the parties shows that [Attorney] Elverman was paid at least $604,000 by [D.P.] He should be ordered to make restitution of that full amount.

¶38 Attorney Elverman appeals, arguing that there are compelling reasons to retroactively revoke his license to practice law so that the revocation runs consecutive to his prior license suspension. Attorney Elverman argues that his license has already remained suspended well beyond the period of the nine-month suspension previously imposed. He notes that he filed a petition for reinstatement from the nine-month license suspension before the OLR filed its complaint in this case, but once the complaint was filed he withdrew the reinstatement petition pending resolution of all issues presented in this matter.

¶39 Attorney Elverman says that during the period of his suspension he has engaged in numerous professional, civic, and charitable events; he has taught numerous seminars on behalf of the State Bar of Wisconsin; and he participated on numerous charitable boards. He says:

[I]t is fair to say that becoming an equity partner at two major law firms requires not only intellectual capacity, but also sound ethical and moral character. Many smart and worthy attorneys saw [Attorney]

17

Elverman fit to become one of their partners. This was not a mistake. Moreover, [Attorney] Elverman has represented some of the most influential and wealthy individuals and families of this State, including CEOs of major private and publicly traded companies. This did not happen by accident——it resulted from an exceptional reputation and character.

Unfortunately, the time period between 2001-2004 did not reflect [Attorney] Elverman's true character. A retroactive sanction will assure that [Attorney] Elverman's second chance will be successful and that he will prove once again that he is worthy of being a member of the legal profession and is a productive and valuable member of society.

¶40 Attorney Elverman also argues that there is no factual basis for the referee requiring him to pay restitution of $604,000. He notes that the stipulation he entered into with the OLR provided that the restitution obligation be as ordered by the Milwaukee County criminal court.

¶41 The OLR agrees with Attorney Elverman that the revocation should be made retroactive to the date Attorney Elverman's nine-month license suspension would have ended. The OLR says the facts of this case are similar to those presented in In re Disciplinary Proceedings Against Cooper, 2013 WI 55, 348 Wis. 2d 266, 833 N.W.2d 88. In Cooper this court found that the misconduct at issue in two cases involving the attorney occurred during roughly the same timeframe. Accordingly, the new license suspension was made retroactive.

¶42 With respect to the issue of restitution, the OLR notes that the record before the referee did not disclose the amount of restitution that was ordered by the criminal court. The OLR subsequently moved to supplement the record to include a

18

copy of the judgment of conviction which indicates that restitution in the amount of $325,000, less payments already made, was ordered.

¶43 A referee's findings of fact are affirmed unless clearly erroneously. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶44 With the exception of the amount of restitution ordered, there is no showing that any of the referee's findings of fact are erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Elverman violated all of the supreme court rules set forth above.

¶45 Revocation of an attorney's license to practice law is the most severe sanction this court can impose. It is reserved for the most egregious cases. We agree that in this case, no sanction short of revocation would be sufficient to protect the public, achieve deterrence, and impress upon Attorney Elverman the seriousness of his misconduct.

¶46 We agree with the referee's recommendation that the revocation of Attorney Elverman's license not be made retroactive. Although Attorney Elverman's actual theft of D.P.'s money may have ended in 2004, it appears that he continued to take actions to the detriment of her estate past

19

the time that his license to practice law was suspended in 2008. In addition, both Attorney Elverman and the OLR disregard the fact that in July of 2011 Attorney Elverman was convicted of disorderly conduct as the result of a domestic violence incident that occurred in May 2011. Attorney Elverman's failure to timely report that conviction to this court, and his failure to cooperate with the OLR's investigation into that incident, is yet another indication of Attorney Elverman's true character. This fact situation is readily distinguishable from the one presented in Cooper. The misconduct at issue in this case is extremely serious. Attorney Elverman took advantage of an elderly woman who was suffering from Alzheimer's disease and stole a large amount of money from her. Accordingly, we decline the parties' request to make revocation of his license retroactive.

¶47 Turning to the issue of restitution, it is unfortunate that the referee was not provided with a copy of the judgment of conviction, which would have disclosed the amount of restitution ordered by the circuit court. The record has now been supplemented to include a copy of the judgment of conviction. We find it appropriate to order Attorney Elverman to pay restitution in the amount of $325,000, less payments already made. Finally, we find it appropriate to require Attorney Elverman to pay the full costs of this proceeding.

¶48 IT IS ORDERED that the license of Jeffrey L. Elverman to practice law in Wisconsin is revoked, effective the date of this order.

20

¶49 IT IS FURTHER ORDERED that Jeffrey L. Elverman be required to pay restitution in the amount and under the terms ordered by the Milwaukee County criminal court in State v. Elverman, No. 2010-CF-5940.

¶50 IT IS FURTHER ORDERED that within 60 days of the date of this order, Jeffrey L. Elverman shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶51 IT IS FURTHER ORDERED that, to the extent he has not already done so, Jeffrey L. Elverman shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been revoked.