# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1185-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Adam J. Wiensch, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, |
| | v. |
| | Adam J. Wiensch, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST WIENSCH

| | |
|---|---|
| OPINION FILED: | October 16, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2018 WI 98**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP1185-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Adam J. Wiensch, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Adam J. Wiensch,**

      **Respondent.**

**FILED**

**OCT 16, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review a stipulation filed pursuant to Supreme Court Rule (SCR) 22.12 by the Office of Lawyer Regulation (OLR) and Attorney Adam J. Wiensch.   In the stipulation, Attorney Wiensch admits that he committed professional misconduct, and he agrees with the OLR's request that his license to practice law in Wisconsin be suspended for a period of two years.

¶2  After careful review of the matter, we accept the stipulation and impose the requested discipline.  Because Attorney Wiensch entered into a comprehensive stipulation prior to the appointment of a referee, we do not require him to pay the costs of this proceeding.

¶3  Attorney Wiensch was admitted to practice law in Wisconsin in 1991.  He has no prior disciplinary history.  He was formerly a partner of Foley & Lardner, LLP, (Foley firm) working out of the firm's Milwaukee, Wisconsin office.  At all times material to this matter, Attorney Wiensch worked in the firm's trust and estates practice group.

¶4  On June 25, 2018, the OLR filed a complaint alleging that Attorney Wiensch had engaged in 13 counts of misconduct. The OLR's complaint sought a two-year suspension of Attorney Wiensch's license to practice law in Wisconsin.

¶5  On August 15, 2018, the OLR and Attorney Wiensch filed a stipulation pursuant to SCR 22.12.  The following facts are taken from the stipulation.

¶6  While working at the Foley firm, Attorney Wiensch provided estate planning services to a husband and wife who were owners of a privately owned business corporation.  Attorney Wiensch prepared a trust under the terms of which the husband and wife were the trust donors and their children were the trustees and beneficiaries.  Attorney Wiensch drafted an Installment Sale Agreement, pursuant to which the husband sold most of his stock in the company to the trust in exchange for a promissory note in an amount in excess of $50 million based on

the appraised value of the stock sold. The purpose of the stock sale was to transfer wealth to the clients' children, via the trust, free of gift and estate taxes and to ensure that any future appreciation of the stock held by the trust would not become part of the husband's estate.

¶7 Transactions structured like the stock sale are reviewed by the Internal Revenue Service (IRS) to determine if the promissory note is a bona fide debt, or if the transaction should be treated as a taxable gift, or if transferred assets should be included in the seller's gross estate for purposes of determining the estate tax liability. Strategies used by estate planning professionals to minimize the risk of an IRS challenge to transactions such as the stock sale have included the use of personal guarantees by trust beneficiaries of a certain percentage of the sale price, often ten percent, or of a defined value formula clause that automatically adjusts valuation of the transferred assets based on a final determination by the IRS or a court.

¶8 The husband died first, and pursuant to his estate plan, ownership of his remaining shares in the company passed to his wife as the surviving spouse. Attorney Wiensch was retained to represent the husband's estate. Attorney Wiensch prepared the estate tax return for the husband's estate and filed it with the IRS. The IRS audited the husband's estate tax return, as well as other gift tax returns filed on behalf of the clients for years prior to the husband's death.

3

¶9 An IRS estate tax attorney served as the examiner for the IRS in conducting the audit. The IRS attorney corresponded with Attorney Wiensch in an effort to obtain information material to the audit. In September 2012, in response to requests from the IRS attorney, Attorney Wiensch sent the IRS copies of an Installment Sale Agreement, a Collateral Pledge Agreement, and a Guaranty of Specific Transaction. Attorney Wiensch represented to the IRS that the Installment Sale Agreement memorialized the terms of the stock sale and that the Collateral Pledge and Guaranty related to the stock sale. The copy of the Installment Sale Agreement Attorney Wiensch sent to the IRS in September 2012 contained a defined value formula clause. Attorney Wiensch altered and misdated the Installment Sale Agreement he sent to the IRS in September 2012. He did not prepare this document contemporaneously with the stock sale. The Installment Sale Agreement the husband actually executed on an earlier date did not contain the defined value formula clause.

¶10 Attorney Wiensch also altered and misdated the Guaranty he sent to the IRS in September of 2012. He did not prepare this document contemporaneously with the stock sale. He copied the signatures of the clients' children from a different document bearing a different date and pasted the signatures on the copy of the Guaranty he sent to the IRS attorney.

¶11 Subsequent to its receipt of Attorney Wiensch's September 2012 letter and enclosures, the IRS issued a Notice of Deficiency with respect to the estate and gift tax returns

4

Attorney Wiensch filed on behalf of the husband's estate.  In the Notice of Deficiency, the IRS asserted that the stock sale was a gift.  The IRS also asserted, in the alternative, that if the sale was not a gift, the stock value at the time of the transfer was double the appraised value of the stock.  The notice stated that the IRS sought gift and estate taxes and negligence penalties against the husband's estate in the sum of multiple millions of dollars.

¶12  The IRS simultaneously issued a Notice of Deficiency regarding the wife, asserting she owed gift taxes and penalties in the sum of multiple millions of dollars.  In the Notice of Deficiency issued to the wife, the IRS raised the same issues it had raised in the Notice of Deficiency issued to the husband's estate.

¶13  After the IRS issued the Notice of Deficiency to her, the wife died.  The clients' children, as personal representatives of the husband's estate, retained the Foley firm to respond to the Notice of Deficiency issued to his estate. The clients' children, as personal representatives of the wife's estate, also retained the Foley firm to respond to the Notice of Deficiency issued to the wife.

¶14  Attorneys with the Foley firm other than Attorney Wiensch filed a petition on behalf of both the husband and wife's estate seeking a redetermination of the deficiencies found by the IRS.  The petitions filed by the Foley attorneys alleged the stock sale was made pursuant to the Installment Sale Agreement Attorney Wiensch had altered to contain a defined

value formula clause. The petitions also relied on the altered Guaranty purportedly signed by the clients' children that Attorney Wiensch had sent to the IRS. At the time they filed the petitions on behalf of the clients' estates, the Foley attorneys did not know that the Installment Sale Agreement relied on and the Guaranty purportedly signed by the clients' children had been altered by Attorney Wiensch. Attorney Wiensch did not inform the IRS attorney or the Foley attorneys that he had altered and misdated the Installment Sale Agreement and the Guaranty.

¶15 While the petitions were pending, the IRS continued its audit of the wife's estate and gift tax returns. One item focused upon by the IRS was a lifetime gift transfer by the wife of some shares of the company she had inherited directly from the husband. These transfers were reported on gift tax returns filed with the IRS after the wife's death indicating that just months prior to her death, the wife had transferred the shares to the clients' children.

¶16 The same IRS attorney examining the husband's estate was assigned the examination of the wife's estate and gift tax returns. In conducting the examination, the IRS attorney requested information from Attorney Wiensch showing that the wife was mentally competent and authorized to make or consent to stock gifts to the clients' children. By letter sent in September 2015, the IRS attorney asked Attorney Wiensch if the stock gifts were made pursuant to a Power of Attorney. Attorney Wiensch responded to the IRS in October 2015, saying that the

6

stock gifts were made directly by the wife. In his October 2015 letter to the IRS attorney, Attorney Wiensch enclosed a copy of a Durable Power of Attorney to Make Gifts bearing an August 1999 date containing the wife's signature. The instrument states that the wife appointed the husband as her agent and that if he lacked capacity to act, she appointed the clients' children to be her agents. Attorney Wiensch created an altered Durable Power of Attorney to Make Gifts dated August 1999 by copying the wife's signature from another document. Attorney Wiensch never informed the IRS attorney or the Foley attorneys that he had altered and misdated the Durable Power of Attorney to Make Gifts that he sent to the IRS attorney in October 2015.

¶17 The IRS noted that the altered Durable Power of Attorney gave the wife limited authority to make transfers of stock and in November 2015, the IRS attorney advised Attorney Wiensch that all shares of the company purportedly gifted by the wife would be considered part of the wife's estate.

¶18 While the audit of the wife's estate and gift tax returns was still underway, the IRS and the husband's estate settled the issues presented in the petition filed on behalf of the husband's estate. The settlement of the petition filed on behalf of the husband's estate was induced by fraud, based on the altered and misdated documents that Attorney Wiensch had provided to the IRS attorney in September of 2012.

¶19 By letter dated April 14, 2016, the IRS attorney requested a response from Attorney Wiensch to the letter sent in November 2015 addressing the wife's authority to make the stock

transfers under the August 1999 Durable Power of Attorney to Make Gifts that Attorney Wiensch had provided in October 2015. By letter dated June 16, 2016 and transmitted by facsimile, Attorney Wiensch sent the IRS attorney a copy of a Durable Power of Attorney for Financial Matters bearing a February 2011 date purportedly signed by the wife. Attorney Wiensch created this document by copying and pasting the wife's signature from another document.

¶20 Suspecting that the February 2011 Durable Power of Attorney was not what Attorney Wiensch purported it to be, the IRS attorney asked that Attorney Wiensch produce the original copies of the 1999 and 2011 powers of attorney and the February 2011 amendment to the wife's trust. Attorney Wiensch told the IRS that he did not have the originals of the requested documents.

¶21 The IRS attorney then wrote directly to the clients' children asking that the original documents that had been requested from Attorney Wiensch be produced. On July 13, 2016, Attorney Wiensch told the IRS attorney that the clients' children were looking for the original documents but that "there is no reason to retain an original power of attorney after a principal's death because the power of attorney lapses on a principal's death."

¶22 In July 2016, the IRS attorney told Attorney Wiensch the IRS would need to interview the clients' children in person.

¶23 By letter dated August 22, 2016, the Foley firm informed the IRS that Attorney Wiensch was no longer with the

8

firm and that they believed the August 1999 Durable Power of Attorney to Make Gifts and the February 2011 Durable Power of Attorney for Financial Matters that Attorney Wiensch had provided to the IRS were not authentic and were being withdrawn. The Foley firm subsequently alerted the IRS to the irregularities later discovered with regard to the Guaranty and the defined value formula clause in the Installment Sale Agreement and the firm reported Attorney Wiensch's conduct to the OLR.

¶24 In a December 23, 2016, letter from his counsel to the OLR, Attorney Wiensch admitted that he had created the August 1999 Durable Power of Attorney to Make Gifts and the February 2011 Durable Power of Attorney for Financial Matters in late 2015 or early 2016. By email transmitted to the OLR on March 31, 2017, counsel for Attorney Wiensch informed the OLR that Attorney Wiensch conceded that he had altered and misdated the Installment Sale Agreement and Guaranty of Specific Transaction he provided to the IRS in September 2012 in connection with the audit of the husband's estate.

¶25 In the stipulation, Attorney Wiensch states that he has no defense to any of the disciplinary violations alleged in the OLR's complaint. Attorney Wiensch asserts that during the time of his misconduct, he faced several highly disruptive and challenging personal issues. Attorney Wiensch says he was suffering from substantial clinical depression for which his treatment had not been meaningfully effective. Attorney Wiensch says he also suffered from an active, uncontrolled dependency on

9

alcohol. Attorney Wiensch says he has since stopped drinking and has been sober since the time he was confronted with his misconduct, having incorporated Alcoholics Anonymous (AA) into his life, and he has supplied the OLR with verification that he has attended AA meetings regularly since March 2017. Attorney Wiensch says he has also focused on dealing with his clinical depression and has successfully taken steps to substantially achieve a stable and healthy mental health status.

¶26 The OLR's complaint alleges four violations of SCR 20:3.4(a),[1] five violations of SCR 20:8.4(c),[2] and three violations of SCR 20:4.1(a).[3] In addition, the complaint alleges that by failing to disclose to Foley and Lardner, LLP, his conduct in drafting false documents and in submitting them to the IRS, Attorney Wiensch breached the fiduciary duties owed to his firm and his duty of honesty in his professional dealings with the firm, thereby violating a standard of conduct set forth by this court in In re Disciplinary Proceedings Against Shea,

---

[1] SCR 20:3.4(a) provides: "A lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] SCR 20:4.1(a) provides: "In the course of representing a client a lawyer shall not knowingly make a false statement of a material fact or law to a 3rd person."

190 Wis. 2d 560, 527 N.W.2d 314 (1995), actionable via SCR 20:8.4(f).[4]

¶27 The parties' stipulation provides that Attorney Wiensch fully understands the stipulation and the ramifications that would follow from this court's imposition of the stipulated level of discipline, a two-year suspension of Attorney Wiensch's license to practice law. The stipulation further provides that it did not result from plea bargaining; that Attorney Wiensch fully understands his right to continue to contest the matter, that he has consulted with counsel and that his entry into the stipulation was made knowingly and voluntarily.

¶28 In its memorandum in support of the stipulation, the OLR states that in determining an appropriate level of discipline to seek in this matter, the OLR director considered Attorney Wiensch's lack of disciplinary history, precedent in other disciplinary cases, aggravating and mitigating factors under the ABA Standards for Imposing Lawyer Sanctions, as well as the particular circumstances of this case.

¶29 The OLR says in reviewing sanctions imposed in other cases involving an attorney's submission of false documents to courts or other agencies, on the low end of the spectrum is In re Disciplinary Proceedings Against Donovan, 211 Wis. 2d 451, 564 N.W.2d 772 (1997), in which this court issued a six-month

---

[4] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

license suspension for an attorney's misconduct in filing false documents with the court in order to obtain favorable treatment for an acquaintance and for a former boyfriend in a case she was prosecuting as a municipal attorney. The OLR notes that Attorney Donovan was an inexperienced attorney who immediately admitted her wrongdoing and did not benefit financially from her conduct. In addition, the OLR points out Attorney Donovan suffered other collateral consequences of her misconduct, as she was convicted of misdemeanor forgery.

¶30 The OLR notes that in In re Disciplinary Proceedings Against Spangler, 2016 WI 61, 370 Wis. 2d 369, 881 N.W.2d 35, this court also imposed a six-month suspension on an attorney who created fabricated documents to support false representations made to his clients that their lawsuits were pending when in fact they were not. The OLR notes that like Attorney Donovan, Attorney Spangler had no prior disciplinary history and he stepped up and made the clients whole for their losses.

¶31 The OLR says that at the opposite end of the spectrum is In re Disciplinary Proceedings Against Elverman, 2014 WI 15, 353 Wis. 2d 98, 845 N.W.2d 653, in which this court revoked Attorney Elverman's license to practice law for dishonest conduct in preparing false billing invoices, stealing more than $600,000 from an elderly client in connection with estate planning services, and failing to cooperate with the OLR. Attorney Elverman had a prior nine-month suspension for failing to declare income received from the client in his tax returns.

12

Attorney Elverman was also convicted of felony theft in connection with the conduct that resulted in his revocation.

¶32 The OLR says based on this precedent, it believes a two-year suspension of Attorney Wiensch's license is appropriate. The OLR says Attorney Wiensch's misconduct was very serious, and it was calculated and deliberate. It notes Attorney Wiensch created and submitted false documents to the IRS on three occasions in the course of the audits of two estates; he knowingly allowed the court, the IRS, and other partners in his law firm to rely on those false documents in reaching an agreement to settle litigation involving the estates; and he made misleading statements to the IRS when it questioned the veracity of one of the false documents he provided.

¶33 The OLR says despite the circumstances under which it settled the litigation involving the estates, the IRS did not move to reopen the cases after it was informed of Attorney Wiensch's misconduct. In addition, the OLR notes that Attorney Wiensch's clients have not asserted to the OLR that they sustained any harm for which they have not been made whole. However, the OLR says that Attorney Wiensch placed his law firm and his partners at substantial risk by submitting the false documents and allowing the partners in his firm to rely on the false documents in litigation with the IRS. The OLR says Attorney Wiensch's misconduct undermines public confidence in the credibility of the legal system.

13

¶34 As to mitigating factors, the OLR notes that Attorney Wiensch has no prior discipline; he cooperated with the OLR's investigation; and he did not convert client funds. As to aggravating factors, the OLR notes that Attorney Wiensch was a very experienced attorney; the misconduct occurred over a period of years and involved multiple documents and multiple instances; the misconduct was deliberate and calculated, and it occurred in the context of federal tax audits involving very substantial sums of money.

¶35 After closely reviewing the matter, we accept the stipulation and determine that Attorney Wiensch engaged in the 13 counts of misconduct alleged in the OLR's complaint. We further conclude that a two-year suspension of Attorney Wiensch's license to practice law is an appropriate level of discipline to impose in view of the serious nature of the misconduct and the various aggravating and mitigating factors present in this case. Although the misconduct here does not rise to the level that warranted revocation in Elverman, Attorney Wiensch deliberately misled the IRS and falsified multiple documents. The deceptions and misrepresentations, both to the IRS and the other attorneys at Attorney Wiensch's firm, continued for several years. Attorney Wiensch was an experienced attorney who should have known better. His misconduct harmed his clients and his law firm and, as the OLR noted, it undermined public confidence in the credibility of the legal system. A two-year suspension of Attorney Wiensch's law license is an appropriate sanction for his misconduct. Because

14

this matter was brought to the court in the context of an SCR 22.12 stipulation without the need for the appointment of a referee, we do not impose any costs on Attorney Wiensch.

¶36 IT IS ORDERED that the license of Adam J. Wiensch to practice law in Wisconsin is suspended for a period of two years, effective November 27, 2018.

¶37 IT IS FURTHER ORDERED that Adam J. Wiensch shall comply with the provisions of SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

¶38 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement. See SCR 22.29(4)(c).